UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

September 30, 2012

Charles E. Binder, Esq.
60 E. 42nd Street, Ste. 520
New York, NY 10165

Frederick A. Raab, Esq.
Mignini & Raab LLP
606 Baltimore Avenue Ste. 100
Towson, MD  21211

Alex S. Gordon, AUSA
36 S. Charles Street
4th Floor
Baltimore, MD  21201

**Re: Coretta Giles v. Michael J. Astrue, Commissioner of Social Security, PWG-10-2510**

Dear Counsel:

Pending by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Ms. Coretta Giles's (sometimes referred to as "Claimant") claims for Disability Insurance Benefits ("DIB")and Supplemental Security Income ("SSI"). (ECF Nos. 9, 15, 24). Plaintiff also filed a Response to Defendant's Motion (ECF. No. 25). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court DENIES the Commissioner's Motion, and GRANTS the Plaintiff's Alternative Motion for Remand.

Ms. Giles filed her applications for SSI and DIB on August 4, 2006, alleging an onset date of disability beginning July 7, 2006, as a result of her status post-acute pulmonary embolism, her hypercoaguable state, hypertension, asthma, depression and an anxiety disorder. (Tr. 23, 209). The claim was denied

initially and on reconsideration. (Tr. 450-452). A hearing was held before an Administrative Law Judge ("ALJ") on June 19, 2008, where Ms. Giles, who was represented by counsel, appeared and testified. (Tr. 574-600). In a decision dated July 18, 2008, the ALJ found that Ms. Giles was not disabled within the meaning of the Act. (Tr. 21-29). The ALJ found that her hypercoaguable state, asthma and anxiety disorder were severe impairments within the meaning of 20 C.F.R. §§ 404.1521, 416.921, insofar as they were impairments which caused significant vocationally relevant limitations.(Tr. 23). At step three, the ALJ determined that Ms. Giles' impairments did not meet or medically equal the criteria of any of the listed impairments in the "Listing of Impairments" ("LOI" or "Listings") set forth in 20 C.F.R. Part 404, Subpt. P, App. 1.  (Tr. 24).  The ALJ also found that Claimant retained the residual functional capacity ("RFC") to perform medium work except that she could not climb ladders, scaffolds, or ropes, and she needs to avoid concentrated exposure to unprotected heights and dangerous machinery, and must avoid extreme cold and fumes.  Nonxertionally the ALJ found she could understand, remember, and carry out simple job instructions. (Tr. 25).  Based on her RFC, the ALJ found that Claimant could not perform any of her past relevant work ("PRW"). (Tr. 28).  Next, the ALJ concluded that Claimant's ability to perform work at the medium exertional level had been compromised by nonexertional limitations but that those limitations had little or no effect on her ability to perform unskilled medium work.  Accordingly the ALJ concluded that under the framework of section 203.29 of the Medical Vocational Guidelines ("GRIDS"), Claimant was not disabled (Tr. 29).  On July 20, 2010, the Appeals Council denied Ms. Giles' request for review, thereby adopting the ALJ's decision as the "final decision" of the Commissioner.(Tr. 6-10).

Claimant argues, *inter alia,* that the ALJ erred at steps three, four, and five of the five step sequential evaluation. Specifically, she argues that the ALJ erred determining whether she met a Listing, in determining her RFC, and in relying exclusively on the GRIDS to find her not disabled. As explained below, I conclude that the ALJ's decision is not supported by substantial evidence, and therefore will DENY the Commissioner's Motion and GRANT the Plaintiff's Alternative Motion for Remand.

Ms. Giles argues that she meets the medical criteria of Listings 12.04 and/or 12.06 and that the ALJ failed properly to analyze the opinions of her treating physicians, Dr. Itskowitz

2

and Dr. Somefun.  The Commissioner argues that the ALJ properly considered the criteria of the relevant Listing and adequately discussed the basis for his findings in his decision. *See* Defendant's Memorandum, pp. 12-23.

20 C.F.R. § § 404.1527(d), 416.927(d) requires the ALJ to give a treating physician's opinion controlling weight if two conditions are met: (1) it is supported by medically acceptable clinical and laboratory diagnostic techniques and (2) it is not inconsistent with the other substantial evidence in the record. *See Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).  When the ALJ determines that a treating physician's opinion is not entitled to controlling weight, the ALJ must determine what weight, if any, to give that opinion and must give "specific reasons" in his opinion for that decision.  SSR 96-2Pp (1996 WL 374188, *5).  Further, the ALJ must consider various factors in determining what weight should be given including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence;(4) consistency between the opinion and the record as a whole;(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the Secretary's attention which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527, 416.927 (d)(2)(i),(d)(2)(ii)(3)-(6);  *See also* SSR 96-5p; SSR 96-2p.  After review of the record and the ALJ's decision, it is apparent that the ALJ failed to discuss his evaluation of the standards outlined above.  For example, the ALJ never discussed the length, or types, of treatment that Claimant received from Dr. Somefun which included psychotropic medications and monthly therapy sessions. (Tr. 27, 277-313).  Furthermore, the ALJ found that Ms. Giles was limited in the four areas of functioning as follows:

> "mild" restriction in activities of daily living;
> "mid" restrictions in social functioning;
> "moderate" impairment in her ability to concentrate; and
> "no" episodes of decompensation in the workplace.

(Tr. 24).  The ALJ then found that the evidence did not support a finding that Claimant met or equaled any of the Listed Impairments because the evidence failed to satisfy the

3

requirements of the "B" criteria. (Tr. 24-25). However, the ALJ's discussion at step three was inadequate. There are findings in the record -- submitted by Claimant's treating physicians -- which support Claimant's argument that she meets Listing 12.04 and or 12.06. These reports were not discussed at step three of the sequential evaluation. The treating physicians' opinions -- which were not discussed until step four of the sequential evaluation -- support Claimant's argument that she meets a Listing. The ALJ stated that the treating doctors' opinions were "afforded minimal weight" at step four because they:

> "[T]hey do not match the longitudinal medical evidence, they are internally inconsistent with their own GAF ratings of 60-65, and they are inconsistent with claimant's admitted activities of daily living and work activity." (Tr. 28).

This is not an accurate characterization of the record. There are reported findings in the record submitted by the state agency reviewing physician which support Claimant's arguments. For example, on February 15, 2007, Dr. Carolyn Moore completed a Psychiatric Review Technique Form ("PRTF") and a Mental Residual Functional Capacity Assessment ("MRFCA") and stated, *inter alia,* that Claimant had "moderate" limitations in her abilities: to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; **complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and; respond appropriately to changes in the work setting**. See Exhibits 17-F and 18-F.(Tr. 259-274)(emphasis added). The ALJ's findings conflict with Dr. Moore's findings. For example at step three the ALJ stated that "there is no evidence that she has experienced episodes of decompensation." (Tr. 24). However, Dr. Moore stated that Ms. Giles experienced "one or two" episodes of decompensation. (Tr. 269). Since Exhibits 17-F and 18-F were not properly discussed by the ALJ, the undersigned has no way of knowing whether the ALJ properly considered this evidence and consequently whether this evidence supports, or conflicts with, the ALJ's finding regarding Ms. Giles' impairments. From the record before me, it is not clear from his decision whether the ALJ properly evaluated Ms. Giles' impairments at the third or fourth step of the sequential

4

evaluation. *See Baker v. Chater*, 957 F. Supp. 75, 79 (D. Md. 1996)(in evaluating the severity of mental impairments a special procedure must be followed by the Commissioner at each level of administrative review).

Even were I to assume, *arguendo*, that the ALJ's findings at step three are supported by substantial evidence, a remand is still warranted. I find the ALJ erred at steps four and five of the sequential evaluation in evaluating Ms. Giles' mental RFC and in relying on the GRIDS. The ALJ failed to discuss whether he considered properly all of the evidence in determining Claimant's RFC. The ALJ's stated:

> "The Claimant has the residual functional capacity to perform medium work except that she cannot climb ladders, scaffolds, or ropes, she needs to avoid concentrated exposure to unprotected heights or dangerous machinery, and must avoid extreme cold and fumes. Nonxertionally, she can understand, remember, and carry out simple job instructions." (Tr. 25).

The ALJ documented his specific findings as to the degree of limitation in each of the four areas of functioning described in paragraph(c) of §§416.920a, 404.1520a. (Tr. 24-25). However the ALJ's discussion of Ms. Giles' mental limitations at steps two and three was not an RFC assessment[1], and did not satisfy the ALJ's duties at step 4 of the sequential evaluation.
SSR 96-8p, in relevant part, states as follows:

> [T]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria **are not an RFC assessment** but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. **The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process require a more detailed assessment**

---

[1] The Introduction to Listing 12.00 *Mental Disorders*, in relevant part, states: "**An assessment of your RFC <u>complements</u> the functional evaluation necessary for paragraphs B and C of the listings <u>by requiring consideration of an expanded list of work related capacities</u> that may be affected by mental disorders when your impairment is severe but neither meets nor is equivalent in severity to a listed mental impairment.**" *See* 20 CFR Pt. 404, Subpt.P, App. 1 (emphasis added); *See also* SSR 96-8p (1996 WL 374184).

5

> **by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.** SSR 96-8p (1996 WL 374184, *4(S.S.A.)).(Emphasis added).

While the ALJ referenced the above cited language in his decision, he nevertheless failed to comply with it. (Tr. 25). The ALJ's RFC analysis did not include any of the required detailed findings outlined by Dr. Moore in Exhibit 18-F. (Tr. 272-274). Rather, the ALJ stated, in a conclusory fashion, at step four of the sequential evaluation that Ms. Giles could perform "simple job instructions." (Tr. 25). This was not an adequate assessment. *Hilton v. Barnhart* 2006 WL 4046076 (D. Kan.) citing *Wiederholt v. Barnhart,* 121 Fed. Appx. 833 (10th Cir. 2005)(the relatively broad unspecified nature of the description "simple" and unskilled" does not adequately incorporate the more specific findings required).

The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p (1996 WL 374184, *7) (S.S.A.))(emphasis added). Since Dr. Moore's report was not adequately discussed by the ALJ[2] and since the ALJ did not perform the function-by-function assessment described in SSR 96-8p—I have no way of knowing whether the ALJ properly considered this evidence and consequently whether this evidence supports, or conflicts with, the ALJ's finding regarding Ms. Giles' RFC. All limits on work related activities resulting from the mental impairment must be described in the mental RFC assessment. SSR 85-16 *Residual Functional Capacity for Mental Impairments* (1985 WL 56855, *2) (S.S.A.)).

According to Social Security Ruling ("SSR") 96-8p, the mental activities required by competitive, remunerative, unskilled work include:

> Understanding, remembering and carrying out simple instructions.

---

[2] The ALJ referred to Exhibit 17-F as supportive of a finding that Ms. Giles could perform a significant range of medium work. However, the limitations stated by the Dr. Moore indicate otherwise. (Tr. 27, 272-274).

> Making judgments that are commensurate with the functions of unskilled work-i.e., simple work related decisions.
> Responding appropriately to supervision, co-workers **and usual work situations dealing with changes in the work setting**.

(SSR 96-8p 1996 WL 374184 at *6)(Emphasis added).

Another deficiency in the ALJ's decision is the failure to recognize that his reliance on the GRIDS to determine that Ms. Giles was not disabled was improper. At step five in his GRID analysis, the ALJ stated that Ms. Giles':

> "nonexertional limitations **have little or no effect on the occupational base of unskilled medium work**. A finding of not disabled is therefore appropriate under the framework of this rule." (Tr. 29)(Emphasis added).

However the ALJ's decision conflicts with the Commissioner's own Rulings, specifically, SSR 85-15, which states:

> [**T**]**he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis)** to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; **and to deal with changes in a routine work setting**. A substantial loss of ability to meet **any** of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.(emphasis added).

In this case, there is evidence which, as noted previously, was not adequately discussed by the ALJ which indicates Ms. Giles is limited in her ability to respond to changes in the work setting which is a basic requirement of unskilled work according to SSR's 85-15 and 96-8p.

The GRIDS are dispositive of whether a claimant is disabled only when the claimant suffers from purely an exertional impairment *Gory v. Schweiker*, 712 F.2d 929, 930(4th Cir. 1983). In the case of a claimant who suffers from nonexertional impairments or a combination of exertion and nonexertional

7

impairment that prevent him or her from working a full range of work at a given exertional level, the grids may be used only as a guide. *Id.* at 931. In such a case the Commissioner must establish through a vocational expert that jobs exist in the national economy which claimant can perform See *Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989); 20 CFR §404.1569a.

Simply stated, it is not clear from his decision whether the ALJ properly evaluated all of the evidence regarding Ms. Giles' mental impairments at the third, fourth or fifth steps of the sequential evaluation. *See Baker v. Chater*, 957 F. Supp. 75, 79 (D. Md. 1996)(in evaluating the severity of mental impairments a special procedure must be followed by the Commissioner at each level of administrative review). Accordingly, I am unable to say that the ALJ's analysis with respect to Ms. Giles' impairments is supported by substantial evidence and the case will be remanded.  On remand the ALJ is to explain his or her reasons for making these determinations in sufficient detail for the Court to conduct meaningful review of these findings. See 20 CFR §416.920a(e)(2).

For the above reasons, the Commissioner's decision is reversed and the case is remanded for further proceedings in accordance with the foregoing Memorandum.  A separate Order shall issue.


Dated:  9/30/12                         _____/s/_____
                                        Paul W. Grimm
                                        United States Magistrate Judge